11 F.3d 1071
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Bertram F. SCHULMAN, Petitioner,
v.
SMALL BUSINESS ADMINISTRATION, Respondent.
 No. 93-3297.
 United States Court of Appeals, Federal Circuit.
 Oct. 20, 1993.
 
 Before ARCHER, LOURIE, and CLEVENGER, Circuit Judges.
 PER CURIAM.
 
 DECISION
 
 1
 Bertram F. Schulman petitions for review from the March 15, 1993 decision of the Merit Systems Protection Board (board) affirming the Small Business Administration's (SBA) removal of Mr. Schulman from his position. Because the decision is based in part on clear factual error that could have materially impacted the result, we vacate and remand this case for reconsideration of the question of whether the government acted for legitimate managerial considerations.
 
 DISCUSSION
 
 2
 Mr. Schulman was an attorney advisor in the New York District Office (NYDO) of the SBA. In 1991, prior to his assignment to the NYDO, Mr. Schulman had been the subject of proposed disciplinary action while working out of a NYDO branch office in Melville, New York. On February 25, 1992, Mr. Schulman accepted a "permanent" reassignment to the NYDO from the Melville Office as part of an agreement settling the proposed disciplinary action. One month later, on March 25, 1992, Mr. Schulman was advised by his superiors that his "services as an attorney advisor, GS-905-13, could be better utilized in the Buffalo District Office." The letter further advised Mr. Schulman that if he declined the assignment, "it will be necessary to propose your removal from federal service." In spite of this warning, Mr. Schulman declined the assignment to the Buffalo District Office (BDO) and was removed from his position in June 1992.
 
 
 3
 Mr. Schulman appealed this decision to the board which affirmed the SBA's removal decision. The board found that the SBA demonstrated a legitimate managerial reason for the reassignment, and that Mr. Schulman had adequate notice of the reassignment and refused to accept it. The board also found the removal was not a reduction in force (RIF) action and that the SBA had not acted in bad faith. Mr. Schulman timely appealed the board's decision to this court.
 
 
 4
 We review decisions of the board under a narrow standard. The board's decision must be affirmed by this court unless it is found to be
 
 
 5
 (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;
 
 
 6
 (2) obtained without procedures required by law, rule, or regulation having been followed; or
 
 
 7
 (3) unsupported by substantial evidence.
 
 
 8
 5 U.S.C. Sec. 7703(c) (1988); True v. Office of Personnel Management, 926 F.2d 1151, 1153 (Fed.Cir.1991). In this case, because factual errors undermine the board's conclusions, we cannot say the decision is supported by substantial evidence.
 
 
 9
 The board considered Mr. Schulman's reassignment to Buffalo to have been made for legitimate management considerations. In reaching this conclusion, one of the important witnesses relied on by the board was Mr. Hallock, the New York Regional Counsel in charge of reviewing attorney assignments. Hallock testified, and the board found, that there was an immediate need for an attorney in the BDO and that there was an oversupply of attorneys in the NYDO. Hallock relied on agency statistics for his testimony, stating that, in his opinion, they provided a "rough" indicator of the relative workloads of the NYDO and BDO. The board credited Hallock as establishing that "the BDO carried a larger number of loan closings than the NYDO and 99 litigation cases, which is about half the number maintained in the NYDO." Yet, during the cross-examination of Hallock, Mr. Schulman demonstrated at least two errors in the statistical data that had been relied upon by Hallock. When confronted with the first error, Mr. Hallock testified "I'm not surprised and I'm not happy about it. We do a lot of things and we make mistakes." The second error related to the number of litigation cases of the BDO. Whereas the total number of litigation cases was shown as 99, the subtotals for those cases added only to 50. Hallock admitted this discrepancy was "more significant" but still expressed confidence in the total. We have not been shown, or found, anything in the record which would provide support for his confidence in the total.
 
 
 10
 This discrepancy in the number of litigation cases is materially related to the issue of whether there was a genuine need for an attorney in the BDO. It also raises serious questions as to the credibility of both the statistics relied on by the SBA and Hallock's testimony. We recognize the deference normally accorded to the trier of fact in making witness credibility determinations, but here, where the board's decision relies on critical statistics that were demonstrated on cross examination to be wrong, we cannot agree with the board's reliance on the testimony of Hallock. See Hagmeyer v. Department of Treasury, 757 F.2d 1281, 1284 (Fed.Cir.1985) (stating that a court need not accept an administrative evaluation of credibility where the testimony is "inherently improbable or discredited by undisputed evidence or physical fact") (citations omitted).
 
 
 11
 This was not the only error in the board's decision related to the question of whether there was a genuine need for an attorney in the BDO. The board, citing the testimony of Hallock, stated that "employees are being detailed to the BDO on an 'as needed basis.' " This finding is inconsistent with the record. Hallock's testimony was that employees were being detailed to the Melville office, a branch office of the NYDO--not to the BDO.
 
 
 12
 These errors, when they are viewed in light of the entire record, undermine the findings of the board as to the legitimacy of the management reasons for Mr. Schulman's transfer. While the board properly declined to review the merits of Mr. Schulman's proposed disciplinary action and settlement agreement, the errors noted above may indicate a connection between his disciplinary settlement and his transfer one month later. We note in this regard that many of the same supervisors involved in the disciplinary action were also involved in Mr. Schulman's subsequent reassignment to the BDO. Moreover, there are apparent inconsistencies between the testimony of Hallock and Forbes, the New York Regional Administrator, that may be more significant than the board indicates. Hallock testified that he discussed with Forbes in December of 1991, before Mr. Schulman's "permanent" transfer to NYDO, possible reassignments of attorneys between districts. Forbes, however, testified he did not discuss with Hallock any reassignment of attorneys until early March of 1992, which was after Mr. Schulman's assignment to the NYDO.
 
 
 13
 Other evidence of record or allegations of Mr. Schulman in his petition to the full board also raise questions about the propriety of Mr. Schulman's reassignment to Buffalo one month after his transfer to the NYDO. Although only one position was open in Buffalo, the SBA reassigned another attorney there apparently with the knowledge that he would not accept. Moreover, after Mr. Schulman declined the position it was allowed to remain open, the explanation provided by Forbes being that "the vacancy would be maintained for a period to allow [Mr. Schulman] to reconsider the reassignment." Forbes also testified that after the incident that lead to the proposed disciplinary action, Forbes was not confident that Mr. Schulman could work independently. For this reason, Hallock would not recommend reassigning Mr. Schulman to Melville or any other office where he would work independently even though the NYDO was overstaffed. Yet, the decision was made to transfer him to an office having only one attorney (and a second in Rochester). Finally, Mr. Schulman alleged in his petition for review by the full board that another NYDO attorney, who had been proposed for reassignment to the BDO but was not because his importance to NYDO, had been reassigned to the Newark office, leaving the BDO position still unfilled.
 
 
 14
 In view of the foregoing, we are unable to conclude that the board's decision was supported by substantial evidence. Accordingly, we vacate the decision of the board and remand the case for reconsideration of the question of whether the SBA had a legitimate managerial purpose for the proposed reassignment of Mr. Schulman.
 
 COSTS
 
 15
 No costs.